UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOUGLAS R. MCCARROLL,

                               Plaintiff,

                                                                       9:08-CV-1343
v.                                                               (DNH/GHL)

FEDERAL BUREAU OF PRISONS, HARLEY
G. LAPPIN, DEBORAH G. SCHULT, DAWN
MARINI, A. LESTER, ROBERT S. MUELLER, III,

                               Defendants.
_____

APPEARANCES:                                                 OF COUNSEL:

DOUGLAS R. MCCARROLL
Plaintiff *pro se*
c/o Law Offices of Bruce Corrigan, Jr.
1853 Post Road East
Westport, CT 06880

HON. RICHARD S. HARTUNIAN                       CHARLES E. ROBERTS, ESQ.
United States Attorney for the
 Northern District of New York
*Counsel for Defendants Lappin, Schult, Marini,*
    *Lester, and the Bureau of Prisons*
Syracuse Office
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Douglas R. McCarroll alleges

that Defendants violated his constitutional and statutory rights by taking a sample of his blood, rather than his hair or saliva, for inclusion in a national DNA database. (Dkt. No. 1.) Defendants Harley G. Lappin, Deborah G. Schult, Dawn Marini, A. Lester, and the Federal Bureau of Prisons moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 14.) In a Report-Recommendation issued on March 2, 2010 ("March Report"), I recommended that Defendants' motion be granted in part and denied in part. (Dkt. No. 27.) Defendants objected to the March Report. (Dkt. Nos. 28 and 29.) Judge Hurd remanded the matter to me for reconsideration of the motion to dismiss in conjunction with *Redd v. Wright*, 597 F.3d 532 (2d Cir. 2010), a Second Circuit decision issued a week after the March Report. (Dkt. No. 31.)

Having carefully reviewed the matter in light of Defendants' objections and the Second Circuit's opinion in *Redd*, I recommend that the Court dismiss the complaint in its entirety.

I.     **FACTUAL AND PROCEDURAL SUMMARY**

The facts associated with this action and the standards to be applied when reviewing a motion to dismiss are set forth in detail in the March Report and will not be restated herein.

II.    **SUMMARY OF THE FINDINGS SET FORTH IN THE MARCH REPORT**

In the March Report, I recommended that (1) any *Bivens* claims against the Bureau of Prisons or the Defendants in their official capacities be dismissed *sua sponte*; (2) Plaintiff's request for injunctive relief be dismissed as moot; (3) any claim by Plaintiff that the DNA Act violates the Fourth Amendment be dismissed for failure to state a claim; (4) Defendants' motion to dismiss Plaintiff's *Bivens* free exercise claim be denied; (5) Plaintiff's RLUIPA claim be dismissed *sua sponte* because Plaintiff is a federal prisoner; (6) Plaintiff's RFRA claim should

2

survive *sua sponte* review; (7) Defendant Lappin be dismissed for lack of personal involvement; (8) Defendants' motion to dismiss the claims against Defendants Schult, Marini, and Lester for lack of personal involvement be denied; and (9) Defendant Mueller be ordered to show cause why he should not be charged with any expenses incurred in making service on him.  (Dkt. No. 27.)  I assume the reader's familiarity with the March Report and will not restate the legal analysis therein except to the extent that it is relevant to Defendants' objections.

### III. DEFENDANTS' OBJECTIONS TO THE MARCH REPORT

#### A. Failure to Acknowledge that the FBI's Policy of Blood-Only DNA Collection Serves Legitimate Penological Interests That Justify Any Minimal Intrusion on Plaintiff's Free Exercise Rights.

In the March Report, I discussed at length Defendants' failure to reference, much less analyze, the major Supreme Court and Second Circuit precedents setting forth the proper standard to apply to free exercise claims by prisoners.  (Dkt. No. 27 at 5-6, 10-19.)  Under this standard, the prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) (citing *Ford v. McGinnis*, 352 F.3d 582, 591 (2d Cir. 2003)).  If the prisoner does so, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  *Salahuddin*, 467 F.3d at 275 (punctuation omitted).  "[T]he burden remains with the prisoner to show that these articulated concerns were irrational."  *Id*. (punctuation omitted).  In the March Report I found, and Defendants do not now dispute, that Plaintiff met his threshold burden.  (Dkt. No. 27 at 15-17.)  I then noted that:

> Defendants have not met [their] relatively limited burden. Defendants argue, and Plaintiff concedes, that the DNA Act itself serves an important government interest.  (Defs.' Br. at 12-13;

3

> Compl. ¶ 26.)  However, the policy at issue in this case is not the DNA Act itself, despite Defendants' repeated attempts to characterize Plaintiff's claim in that manner.  Rather, the policy at issue here is the policy of requiring a *blood* sample rather than one of the other types of samples authorized by the DNA Act.  Defendants have not asserted any reason at all for the need to collect blood rather than one of the other types of samples authorized by the DNA Act.  The only references in the record to the reasons for the policy are in attachments to the complaint, which state that the "FBI determined for the purposes of accuracy, efficiency, and compliance with the [A]ct it will analyze only blood samples."  (Compl. Exs. A-1 and A-2.)  Defendants have not even mentioned this assertion, much less made even a minimal attempt to characterize it as an explanation of a legitimate penological interest.

(Dkt. No. 27 at 18-19.)

Defendants now object to the March Report on the basis that "the lower court failed to acknowledge that the FBI's policy of blood-only DNA collection serves legitimate penological interests that justify any minimal intrusion on Plaintiff's free exercise rights."  (Dkt. No. 28 at 2-3.)  Defendants acknowledge that "the motion to dismiss did not expressly reference" the attachments to the complaint, but argue that the documents "clearly satisf[y] the Defendants' burden . . . " *Id*. at 8-9.  Specifically, they argue that

> saliva and hair are not "obvious, easy alternatives" . . . Use of either of these alternatives would result in reduced accuracy in the DNA collection process as well as reduced efficiency, as such an accommodation would subsequently be extended to any inmate with a religious objection to blood tests.

*Id*. at 10.  It is noteworthy that Defendants offer no justification for having failed to previously make this argument or to even reference the major legal precedents.

Defendants' objection is not persuasive for two reasons.  First, the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material

4

that could have been, but was not, presented to the Magistrate Judge in the first instance.[1] Defendants' argument regarding the alleged legitimate penological interest for requiring blood tests could, without doubt, have been presented to the undersigned in the first instance.

Second, Defendants' argument relies on facts (e.g., that saliva and hair samples are, in fact, less efficient and accurate than blood samples and that saliva and hair samples, despite being explicitly authorized by the Act, are not obvious, easy alternatives) that do not appear on the face of the complaint. As another judge in this District has observed, in the religion context the legitimate penological interest inquiry "is particularly fact-lad[]en and often ill-suited for resolution on [a] motion for summary judgment, let alone a motion to dismiss." *Jackson v. Boucaud*, No. 9:08-CV-1373 (TJM/DEP), 2009 U.S. Dist. LEXIS 125893, at *26, 2009 WL

---

[1] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") (internal quotation marks and citations omitted); *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) (citation omitted); s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") (citations omitted); *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") (citations omitted); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") (citation omitted).

6066799, at *7 (N.D.N.Y. Dec. 31, 2009). Therefore, I recommend that the Court overrule Defendants' objection that the March Report erred by its "failure to acknowledge that the FBI's policy of blood-only DNA collection serves legitimate penological interests that justify any minimal intrusion on plaintiff's free exercise rights."

### B. Failure to Apply Current Supervisory Liability Law.

In the March Report, I found that Plaintiff had alleged facts plausibly suggesting that Defendants Schult, Marini, and Lester were personally involved in the alleged constitutional violations. (Dkt. No. 27 at 21-24.) Defendants object to this portion of the March Report, arguing that "the lower court failed to apply current supervisory liability law."[2] (Dkt. No. 28 at 6.)

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under'" *Bivens*. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a *Bivens* cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347

---

[2] I note that Defendants, in their memorandum of law in support of the motion to dismiss, their reply, or their sur-sur-reply, did not cite any of the cases on which they now rely. (Dkt. Nos. 14, 21, and 23.) Nor, again, do they offer any justification to the Court for not having done so.

F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, under a more nuanced view, *Iqbal* does not necessarily negate *Colon*:

> These decisions may overstate *Iqbal*'s impact on supervisory liability. *Iqbal* involved alleged intentional discrimination. The Supreme Court specifically held that "[t]he factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." Where the alleged constitutional violation involved "invidious discrimination in contravention of the First[3] and Fifth Amendments,"

---

[3] The case that the Supreme Court cited for the proposition that a free exercise claim requires a showing of discriminatory intent was *Church of the Lukumi Babalu Aye, Inc. v.*

7

> *Iqbal* held that "plaintiff must plead and prove that the defendant acted with discriminatory purpose," whether the defendant is a subordinate or a supervisor. It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.

*Sash*, 674 F. Supp. 2d at 544 (citations omitted). Here, Plaintiff's constitutional claim does not require a showing of discriminatory intent. Rather, as discussed above, it requires a showing that the blood-only policy is not reasonably related to legitimate penological interests. Therefore, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply and I recommend that the Court overrule Defendants' objections based upon the Court's purported failure to apply current supervisory liability law.

    **C.**    **Failure to Address Defendants' Qualified Immunity Arguments**

In their memorandum of law in support of the motion to dismiss, Defendants argued that they are entitled to qualified immunity because:

> [T]he law in this area is clear: "All the federal circuits that have considered the question have upheld the state and federal DNA indexing laws, as have the overwhelming majority of district courts and state courts." Challenges to such laws have been rejected under a host of constitutional provisions. Further, inmates have a reduced expectation of privacy, the intrusion of a blood test is "minimal," and such tests are "commonplace." Finally, the government has a compelling and indeed "monumental" interest in collecting DNA

---

*City of Hialeah*, 508 U.S. 520 (1993), which did not involve a prisoner. That case therefore applied the *Smith* test rather than the *O'Lone/Turner* "legitimate penological interest" test. For a more complete discussion of these two tests and their implications in this case, see the March Report.

> from inmates.  As noted by Judge Sharpe and adopted by this Court,
> the "person having the sample taken does not have the option to
> dictate the type of sample taken."

(Dkt. No. 14-1 at 12-13, citations omitted.)

I did not address Defendants' qualified immunity argument in the March Report because it simply reiterated Defendants' substantive arguments, which I had already rejected.  Defendants' qualified immunity argument, like Defendants' argument on the merits of Plaintiff's claims, relied almost entirely on Fourth Amendment precedent and assumed that Plaintiff was challenging the constitutionality of the DNA Act as a whole.  As I explained in the March Report, this was a mischaracterization of Plaintiff's claim, which is a religious challenge to the Bureau of Prisons policy of collecting blood samples rather than saliva or hair samples.

Only now, in their objections to the March Report, do Defendants argue that "the right Plaintiff asserts, the right to be free from giving a blood sample on religious grounds, is not 'clearly established.'" (Dkt. No. 28 at 4.)  In support of this argument, Defendants now cite purportedly analogous Northern District of New York cases from 2007 and 2009.  *Id*.  I note, once again, that Defendants have offered no justification to the Court for their failure to previously cite these cases.  These cases could, certainly, have been presented to the undersigned in the first instance and, therefore, should not properly be considered for the first time on *de novo* review of the March Report.

In supplemental objections to the March Report, Defendants cite *Redd v. Wright*, 597 F.3d 532 (2d Cir. 2010), a case decided after the March Report was issued.  In *Redd*, a prisoner challenged the New York Department of Correctional Service's policy of placing prisoners who refused to take tuberculosis blood tests in keeplock confinement.  Redd refused the blood test on

9

religious grounds but offered to submit to saliva testing instead. He was placed in keeplock for thirteen months.

Redd filed suit in federal court, asserting that prison officials violated his First Amendment rights. The district court agreed that the defendants had violated Redd's First Amendment rights. However, the district court granted the defendants' motion for summary judgment on qualified immunity grounds because neither the Second Circuit nor the Supreme Court had held that application of the tuberculosis policy to religious objectors violated the First Amendment.

On appeal, Redd argued that the defendants were not entitled to qualified immunity because the right not to be subjected to punishment or more burdensome confinement as a consequence of religious beliefs was clearly established. The Second Circuit rejected Redd's argument, noting that "the Supreme Court has expressly cautioned against framing the constitutional right at too broad a level of generality" and thus characterizing the right at stake as the "right under the First Amendment . . . to a religious exemption from the . . . Policy." Finding that the right, as narrowly defined, had not been clearly established or "foreshadowed" by any Second Circuit or Supreme Court ruling, the Second Circuit affirmed the district court's ruling that the defendants were entitled to qualified immunity.

Here, in his response to Defendants' objections, Plaintiff urges the Court to define the right at stake in this action broadly, as "the freedom of religion under the First Amendment." (Dkt. No. 32 at 2.) However, as the Second Circuit noted in *Redd*, the constitutional right at stake must be defined narrowly. Therefore, the right at stake in this action is a prisoner's right to submit the saliva or hair sample authorized by the Act rather than blood if submitting a blood

sample would violate the prisoner's religious beliefs.  That right has not been clearly established or foreshadowed by any Second Circuit or Supreme Court ruling.  Therefore, Defendants are entitled to qualified immunity and I therefore recommend that the Court grant their motion to dismiss on those grounds.

### D.     Defendant Mueller

Defendant Mueller refused service of the complaint.  In the March Report, I recommended that Defendant Mueller be ordered, pursuant to Federal Rule of Civil Procedure 4(d)(2), to show good cause why he should not be charged with any expenses incurred in making service upon him.  (Dkt. No. 27 at 24-26.)  Defendants object to this portion of the March Report.  (Dkt. No. 28 at 11-14.)  Plaintiff states that he "has no objection to [D]efendant Mueller not being charged with expenses."  (Dkt. No. 32 at 12.)  In light of my recommendation that the complaint be dismissed on mootness and qualified immunity grounds, I recommend that the Court *sua sponte* dismiss the claims against Defendant Mueller.

### IV.    CONCLUSION

In conclusion, I recommend that the Court (1) dismiss Plaintiff's request for injunctive relief as moot, as discussed in the March Report on page eight; and (2) dismiss Plaintiff's damages claims against all defendants on qualified immunity grounds.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court dismiss this action in it its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  September 30, 2010
        Syracuse, New York

George H. Lowe
United States Magistrate Judge